UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WAYNE EARL LaFOUNTAIN,

        Plaintiff,                   Case No. 1:09-cv-623

v.                                                  Honorable Robert J. Jonker

JAMES COLEMAN et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has been directed to pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action must be dismissed for failure to state a claim.

**Discussion**

I. <u>Factual Allegations</u>

A. **Overarching Theory**

Plaintiff Wayne Earl LaFountain presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Pine River Correctional Facility (SPR). The actions of which he complains occurred both while Plaintiff was housed at the Carson City Correctional Facility (DRF) and while he was housed at the Jackson Temporary Facility (JCS) and the Ionia Bellamy Creek Correctional Facility (IBC). Plaintiff sues the MDOC Deputy Director Dennis Straub (formerly the Warden at JCS), the MDOC Manager of the Office of Policy and Rehearings Richard Stapleton, and DRF Resident Unit Supervisor Deborah Drake (formerly Assistant Resident Unit Supervisor at IBC), together with the following IBC employees: Corrections Officers James Coleman, Joshua Blaha and Andreas Peterson; Hearings Investigator Terri Austin; Warden Kenneth McKee; Program Classification Director Ann Smolinski, and retired IBC Hearings Officer (unknown) Spurgis.

The allegations of Plaintiff's complaint span the years 1989 through 2006. Plaintiff asserts that Defendants charged him with numerous false misconducts and otherwise harassed him as part of a conspiracy to deprive him of 5,490 days of potential, special good-time credits, all in retaliation for the exercise of his First Amendment rights. Further, Plaintiff alleges that Defendants conspired to deprive him of his statutory and constitutional rights to due process during the misconduct proceedings. Thus, the core theory of Plaintiff's complaint is that Defendants arranged a series of false misconduct charges and convictions against him, with the purpose of and effect of stripping him of 5,490 days of good time credit to which he would otherwise be entitled. This

- 2 -

theory, and the timing of Defendants' underlying offense conduct, preclude his civil rights claims as a matter of law.

### B. Detailed Factual Allegations

The overview of Plaintiff's theory is sufficient to support the Court's legal analysis of the case, as articulated later in this opinion. But a more detailed recital of Plaintiff's factual claims will provide context.

Plaintiff alleges that he was diagnosed with Chronic Obstructive Pulmonary Disease (COPD) in August 2000. Notwithstanding the diagnosis, during November and December, 2000, Defendant Straub allegedly assigned Plaintiff to a job involving plastering, sanding and painting, exposing Plaintiff to high levels of particulate matter. Plaintiff alleges that, after he filed a grievance, Straub in some unspecified way influenced Corrections Officer Rogers to write a false major misconduct for disobeying a direct order in the dining hall. Plaintiff complains that he was denied a copy of the videotape as evidence in his defense and that he was falsely convicted on January 16, 2001. On January 18, Straub issued Plaintiff a Notice of Intent to deny 18 days of potential special good-time credits. Plaintiff appealed, alleging violations of due process based on bias and the denial of exculpatory evidence. Defendant Stapleton upheld the appeal on April 24, 2001. (Am. Compl., ¶¶ 8-11.)

In February, 2001, Plaintiff filed a civil rights complaint alleging violations of his Eighth Amendment rights with respect to the exposures to particulate matter. *See LaFountain v. William Martin et al.*, No. 01-60011-AA (E.D. Mich.). Shortly after service of the complaint, Defendant Straub ordered Plaintiff transferred to the Kinross Correctional Facility in Kinchloe, Michigan, 300 miles from Plaintiff's home. The transfer allegedly was ordered in retaliation for the

filing of the lawsuit. Once transferred, Plaintiff was exposed to second-hand smoke. He grieved the problem and, ultimately, in 2005, filed suit in *LaFountain v. Metrish et al.*, No. 2:05-cv-13 (W.D. Mich.). (Am. Compl., ¶¶ 12-13.)

Shortly thereafter, Plaintiff was transferred to the E.C. Brooks Correctional Facility in Muskegon, and later to the Muskegon Correctional Facility. He experienced a similar problem with second-hand smoke at both those facilities and began the grievance processes. As a result of his complaints, a corrections officer allegedly began a pattern of retaliation and harassment, which eventuated in a third lawsuit. *See LaFountain v. Anthony Martin*, No. 1:07-cv-76 (W.D. Mich.). (Am. Compl., ¶13.)

At some unidentified time, Defendant Straub was promoted to MDOC Deputy Director. In that position, Straub approved Plaintiff's transfer to IBC. Plaintiff was approved for placement in the tobacco-free housing unit. Defendant McKee was the warden at IBC, and Plaintiff had daily contact with Defendants Drake, Blaha and Peterson. Shortly after his arrival at IBC, Defendant Smolinski assigned Plaintiff to a yard clean-up crew, but later transferred him to work in the library. During this period, Plaintiff was appointed counsel in the *LaFountain v. William Martin* case, and he was permitted to receive calls from counsel in Defendant Drake's office, about which she allegedly was unhappy. Also, Defendant McKee authorized a room for Straub's attorney to take Plaintiff's deposition. As a result, both Drake and McKee were aware of the lawsuit against Straub. (Am. Compl., ¶¶ 14-17.) On May 15, 2006, Straub allegedly ordered Plaintiff to be taken to the Ionia city hospital for a lung-function test that purportedly was routine. However, the results were sent to a medical provider who was acting as Straub's expert witness at trial. On May 31, 2006, the

trial judge sanctioned Straub's attorneys by not allowing use of the expert testimony at trial. (Am. Compl., ¶¶18-20.)

The next day, June 1, 2006, Defendant McKee reassigned Defendant Coleman from another prison to work at the IBC library, where Plaintiff was employed. Coleman allegedly began to harass Plaintiff and ultimately issued a direct order for Plaintiff to leave the library. Plaintiff complied, but also declared his intent to file a grievance. Plaintiff alleges that the entire incident was videotaped and the library clerk was a witness. On June 1, 2006, Plaintiff filed a grievance, and Coleman issued a double misconduct charge for disobeying a direct order and using profane insolence. Plaintiff requested a hearing and sought witnesses and the production of a variety of evidence, including requesting polygraph tests on both Plaintiff and Defendant Coleman, performance records for Coleman, prior work records for Plaintiff, and the videotape. The hearing investigator, Defendant Austin, issued a report, which concluded that the videotape was no longer available by the date it was sought and Coleman's past performance was irrelevant. Austin ignored the request for a polygraph. Hearing Officer Spurgis conducted a formal hearing and found Plaintiff guilty, concluding that all of the requested evidence was irrelevant. Spurgis then ordered Plaintiff out of his office. Spurgis allegedly ignored the fact that Coleman admitted in his answer to Plaintiff's grievance that the initial problem resulted from Coleman misunderstanding Plaintiff's request for a rubber stamper as a request to use the typewriter. Plaintiff alleges that Spurgis was biased and had predetermined his result. (Am. Compl., ¶¶ 22-27.) Plaintiff filed an administrative appeal of the misconduct finding, which was denied by Defendant Stapleton on June 13, 2007. Plaintiff alleges that Stapleton ignored the claims raised in Plaintiff's appeal and that Stapleton's denial of the appeal was evidence of the ongoing retaliatory conspiracy to deny his good-time credits.

(Am. Compl., ¶¶ 40-44.) Coleman's misconduct charge allegedly formed a significant cause for the denial of Plaintiff's 5,490 special good-time credits. (Am. Compl., ¶ 44(7).)

Plaintiff grieved Spurgis's order to leave the office, which was given before Plaintiff had the opportunity to be heard on all of his objections. He alleges that Spurgis violated multiple MDOC policies. Plaintiff also alleges that Coleman's misconduct accusation was part of a practice of targeting Plaintiff so as to prevent him from accruing good-time credits. Plaintiff told Coleman that he intended to file a retaliation lawsuit against Coleman. He offered to take a polygraph examination. The grievance was rejected at Step I as non-grievable because it involved the substance of a misconduct charge. McKee allegedly endorsed the rejection of the grievance at Step II. (Am. Compl., ¶¶ 28-31.)

On June 26, 2006, Defendant Smolinski issued a reclassification report that informed Plaintiff that he had been placed on "unemployable status." (Am. Compl., ¶ 32.) Smolinski also advised him that the status could result in the withholding of Plaintiff's special good-time credits. Plaintiff told Smolinski that she was violating MICH. DEP'T OF CORR., Policy Directive 05-01-100. Smolinski allegedly told Plaintiff that the reclassification was approved by Defendant McKee. Plaintiff alleges that Smolinski's reclassification violated policy, was based on a false accusation of misconduct, and was intended to deprive Plaintiff of his special good-time credits. He also alleges that the circumstances of the reclassification provide evidence of the conspiracy. (Am. Compl., ¶¶ 32-34.)

On June 28, 2006, Defendants Drake, Blaha and Peterson convened as a classification committee under MICH. DEP'T OF CORR., Policy Directive 03-01-100, to consider whether to recommend granting or denying special good-time credits. They ultimately recommended that

Plaintiff receive none of the 5,490 days of special good-time credits for which he was potentially eligible. He alleges that, in reaching that decision, the committee violated MDOC policy. (Am. Compl., ¶ 35-36.) On June 29, 2006, Defendant McKee accepted the recommendation of the classification committee. That same date, McKee also authorized a security classification screen for transfer of Plaintiff to another prison facility. (Am. Compl., ¶ 37.) Plaintiff alleges, however, that McKee did not release his decision until July 8, 2006, two days after Plaintiff had entered into a settlement of two of his cases, *LaFountain v. William Martin et al.*, No. 01-60011-AA (E.D. Mich.), and *LaFountain v. Metrish et al.*, No. 2:05-cv-13 (W.D. Mich.). Plaintiff did not learn about the decision until after receiving a second time disposition sheet from the warden of the Riverside Correctional Facility, which listed Plaintiff's projected out-date at May 20, 2022, instead of April 2007. Plaintiff alleges that the timing suggests that McKee conspired with Defendant Straub to delay notification in order to cause Plaintiff to settle. (Am. Pet., ¶¶ 35-39.)

Finally, Plaintiff alleges a variety of other false misconduct tickets were filed against him by non-Defendant officers, which he contends support his theory of conspiracy. First, he complains that, in 1989, Corrections Officer Lori Simaski allegedly filed a false misconduct against Plaintiff in retaliation for a claim of race discrimination. Plaintiff was found not guilty of the misconduct. Second, in 1992, Corrections Officer Todd Anderson allegedly retaliated against Plaintiff for threatening to file a grievance. Plaintiff was found guilty of the misconduct. Third, in 1994, Corrections Officer Sherrett allegedly filed a false misconduct, of which Plaintiff was found guilty. Fourth, in 1999, Corrections Officer Joel Jones allegedly filed a false misconduct against Plaintiff in retaliation for Plaintiff's complaints about noise and smoking. Fifth, on December 20, 2000, Corrections Officer Rogers allegedly filed a false misconduct charge, and Plaintiff was found

guilty. Defendant Straub used the guilty finding to deny Plaintiff good-time credits. Sixth, on October 28, 2004, Corrections Officer Mikkelson allegedly filed a false misconduct charge against Plaintiff, and Plaintiff ultimately lost good-time for the conviction. (Am. Compl., ¶ 44(1)-(6).)

### C. Summary of Legal Claim and Request for Relief

Plaintiff contends that Defendants have jointly acted for the purpose of denying him his 5,490 days of good-time credit in retaliation for Plaintiff's exercise of his First Amendment rights. He also argues that Defendants have jointly acted with the intent of denying Plaintiff's statutory entitlements and procedural due process rights by repeatedly issuing and affirming falsified misconduct charges so as to deprive Plaintiff of his special good-time credits. (Am. Compl., 30-31.) Plaintiff alleges that Defendants Straub, Stapleton and McKee have breached their duties under Michigan law and policy in the handling of the various misconducts and grievances and that those breaches provide further evidence of the conspiracy. He argues that the facts surrounding the conduct of the other Defendants also demonstrate their participation in the conspiracy. (Am. Compl., ¶¶ 45-53.) For relief, Plaintiff seeks prospective relief directing Defendants to follow proper misconduct hearing policies; permit Plaintiff to obtain all of the evidence he wants to present in misconduct hearings (such as producing videotapes and performing polygraph tests); enjoin the predetermination of facts; and enjoin the presumption of truthfulness accorded to MDOC staff testimony. He also seeks an order enjoining the forfeiture of all past regular and special good-time credits and reinstating the 5,490 days of past credit that should have accrued. Further, Plaintiff seeks compensatory and punitive damages. (Am. Compl., 31-32.)

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff challenges the results of multiple misconduct hearings, all of which he alleges were filed against him in retaliation for specific exercises of his First Amendment rights and during which he was deprived of due process. Plaintiff contends that Defendants filed the retaliatory misconducts in a successful conspiracy to deprive him of 5,490 days of special good-time credits.

Plaintiff's claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). The Supreme Court has held that claims for declaratory relief and monetary damages that necessarily imply the invalidity of the punishment imposed are not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The *Edwards* Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily

implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir. 2007); *Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges). Moreover, where a prisoner alleges that misconduct charges were falsely filed for a retaliatory purpose, the claim also necessarily implies the invalidity of the misconduct conviction. *See Norwood v. Mich. Dep't of Corr.*, 67 F. App'x 286, 288 (6th Cir. 2003) ("Norwood cannot evade *Heck*'s bar on § 1983 challenges . . . by labeling his cause of action a retaliation claim); *Ruiz v. Bouchard*, 60 F. App'x 572, 574 (6th Cir. 2003) (claim of retaliatory filing of misconducts is barred by the prisoner's conviction on the misconduct charge); *Clemons v. Cook*, 52 F. App'x 762, 763 (6th Cir. 2002) ("A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'") (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)); *cf. Lockett v. Suardini*, 526 F.3d 866, 873 (6th Cir. 2008) (holding that in a case of an alleged retaliatory assault, a First Amendment claim may not necessarily imply the invalidity of the prisoner's misconduct conviction for assault because the prisoner could have been found to have used more force than was necessary to protect himself).

In *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *Id.*; *Thomas*, 481 F.3d at 439; *Johnson v. Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004). The *Muhammad* Court noted that "[t]he effect of disciplinary proceedings on good-time credits is a matter of state law or regulation." *Muhammad*, 540 U.S. at 754. Under Michigan law, the nature of good-time or disciplinary credits depends on when the offense was committed. According to

- 11 -

MICH. COMP. LAWS § 800.33(2), an eligible prisoner who committed his offense before April 1, 1987 receives an *automatic* sentence reduction for any month in which he has not been found guilty of a major misconduct, and the amount of that reduction increases from five days per month in the first two years of the sentence to fifteen days per month for the twentieth year and beyond. In contrast, a prisoner who committed his offense on or after April 1, 1987 loses five days of disciplinary credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33(3). In addition, the warden may order forfeiture of previously accumulated good-time credits in cases. *Id.*[1]

In *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), the Sixth Circuit concluded that the disciplinary credit system that applied to Thomas, who offended after April 1, 1987, was not a good-time program within the meaning of *Edwards*, 520 U.S. at 646, and *Muhammad*, 540 U.S. 754-55, because the program would not necessarily – only potentially – affect the length of a prisoner's sentence. *Thomas*, 481 F.3d at 440 (citing *Dotson*, 544 U.S. at 82 (holding that where the best a prisoner could obtain in a civil rights action was a new parole hearing, the result was not *Heck*-barred because such a result would not necessarily imply a shorter sentence)). As a consequence, the Sixth Circuit held that prisoners who committed their offenses on or after April 1, 1987 were not barred by the *Heck-Edwards* doctrine from seeking relief in a civil rights action before their misconduct

---

[1] Eligibility to earn good-time credits is subject to additional limitations, depending on the date and nature of the offense. Plaintiff's only active sentence is for first-degree criminal sexual conduct, MICH. COMP. LAWS. § 750.520b. He was sentenced to 45 to 70 years on September 5, 2004, for offense conduct that occurred on April 1, 1982. First-degree criminal sexual conduct is a Proposal B offense as identified in MICH. DEP'T OF CORR., Policy Directive 03.01.100, Att. A. Under MICH. DEP'T OF CORR., Policy Directive 03.01.100(E)(2)(a), if a Proposal B offense is committed between December 10, 1978 and January 1, 1983, the prisoner may be granted good-time credits only on the maximum term, though he may be eligible to receive disciplinary credits on the minimum term, as described in MICH. DEP'T OF CORR., Policy Directive 03.01.101, and MICH. COMP. LAWS. § 800.33.

convictions had been overturned.[2] *See Nali v. Ekman*, No. 08-1599, 2009 WL 4641737, at *2 (6th Cir. Dec. 9, 2009) (noting that *Thomas* required a court applying the *Heck* bar to consider whether the offense was committed before or after April 1, 1987). *Thomas*, however, is inapplicable to this case. Plaintiff's Proposal B offense was committed on April 1, 1982. He therefore is *entitled* to good-time credits against his maximum sentence. *See* MICH. DEP'T OF CORR., Policy Directive 03.01.100(E)(2)(a). Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, 102 F. App'x 900, 901 (6th Cir. 2004).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Major Misconduct Hearing Report

---

[2]The *Thomas* court's reasoning is hard to reconcile with the mandatory language of the statute, which provides that disciplinary credits "*shall* be deducted from a prisoner's minimum *and maximum* sentence in order to determine his or her parole eligibility date *and discharge date*." MICH. COMP. LAWS § 800.33(3) (emphasis added). Disciplinary credits therefore would seem necessarily to affect a prisoner's maximum release date – his length of sentence. *See Thompson-Bey v. Stapleton*, 558 F. Supp. 2d 767, 773 (E.D. Mich. 2008) (questioning the reasoning of *Thomas*). The impact on both parole eligibility and maximum sentence appears identical to the interest in issue in *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), in which the Supreme Court concluded that the good-time system would "inevitably affect the duration of the sentence."

Moreover, the reasoning of *Thomas* is at the very least in tension with the basis for the Supreme Court's holding that misconduct convictions resulting in the loss of state-created good-time credits implicate a liberty interest protected by due process. *See Wolff*, 418 U.S. at 557-58. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). As a result, if the *Thomas* court is correct in holding that the disciplinary credit system employed by the MDOC does not "inevitably affect," *Sandin*, 515 U.S. at 487, the length of the prisoner's sentence, then no prisoner governed by the disciplinary credit system reviewed in *Thomas* would seem to have a liberty interest subject to the protections of due process in the first place.

In this case, it is not necessary to wrestle with these quandaries because, as noted in the text, Plaintiff is subject to an earlier good time program that is unquestionably subject to the *Heck-Edwards* doctrine. Indeed, any other result in this case would be entirely incongruous because Plaintiff's pleadings demonstrate that his primary target in the lawsuit is restoration of good time credit he lost as a result of the misconduct convictions that still stand.

- 13 -

is received. MICH. COMP. LAWS § 791.254; MICH. DEP'T OF CORR. Policy Directive 03.03.105, ¶ CCC (effective June 29, 2009). Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2). If Plaintiff is unsuccessful in the circuit court, he could then apply for leave to appeal to the Michigan Court of Appeals and Michigan Supreme Court. *See* MICH. CT. R. 7.203(B), 7.301. If he is not successful in the state courts, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[3]

Plaintiff's misconduct convictions have not been invalidated. Accordingly, Plaintiff's § 1983 claim is not presently cognizable. He therefore fails to state a claim on which relief can be granted. *See Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) (same); *Harris v. Truesdell*, 79 F. App'x 756, 758-59 (6th Cir. 2003) (same).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

---

[3]As previously discussed, a misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *Wolff*, 418 U.S. at 556-57. A challenge to a "shortened" prison sentence is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973). However, a prisoner must ordinarily exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1). Plaintiff LaFountain has filed at least one unsuccessful habeas petition in this Court that also sought to have good time credits restored. *LaFountain v. Balcarcel*, 1:09-cv-826, docket ## 4-6 (W.D. Mich, October 22, 2009).

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   January 21, 2010             /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      UNITED STATES DISTRICT JUDGE